|  |  |
|---|---|
| | ) |
| INVENTIV HEALTH CONSULTING, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALAN D. FRENCH, JR., PRIYA GOGIA, | ) |
| JASON DEBASITIS, and JIERU ZHENG, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY THE DISCOVERY PLAN

Defendants Alan D. French Jr., Priya Gogia, Jason Debasitis, and Jieru Zheng (together, "Defendants") file this Memorandum in Opposition to Plaintiff inVentiv Health Consulting, Inc.'s ("Plaintiff") Motion to Modify the Discovery Plan (the "Motion"). [D.E. 42]. Defendants respectfully request that the Court deny Plaintiff's Motion because Plaintiff cannot show good cause to extend the discovery deadline for six additional months.

## I.    INTRODUCTION

Despite having over a year to complete discovery in this matter (measuring from the Court's October 20, 2018 ruling on Defendants' Motion to Dismiss), [D.E. 21], Plaintiff now seeks to extend the discovery deadline in this matter by six (6) months in order to complete document discovery and take more than a dozen depositions.  [D.E. 43 at pp. 1-2].  Plaintiff cannot show good cause to support its Motion because the additional discovery it seeks is unreasonably cumulative and Plaintiff's own conduct caused any delays in discovery that it now

seeks to rectify through an extraordinary extension. While Defendants do not oppose a brief extension of the discovery deadline through January 31, 2020 to complete reasonable discovery, Plaintiff's request for an additional half-year simply is unnecessary.

## II.    LEGAL STANDARD

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the court concludes that the party seeking relief (or the party's attorney) has not acted diligently in compliance with the schedule.'" *Cook v. Howard*, 484 Fed. Appx. 805, 815 (4th Cir. 2012) (quoting 6A Wright & Miller, Federal Practice and Procedures § 1522.2 (3d ed. 2010)).

## III.    ARGUMENT

At its core, this is not a complicated case: Plaintiff alleges that its former employees, Defendants, violated their restrictive covenants and misappropriated Plaintiff's (yet-to-be identified) confidential information in creating, and working for, Equitas. Nevertheless, from the very beginning, Plaintiff has pursued a strategy of over-litigating this case, seemingly for the purpose of inflating Defendants' litigation costs. While Plaintiff makes much of Defendant's alleged discovery misconduct, Plaintiff's own actions negate its ability to show good cause for the six-month extension it seeks. Plaintiff has not diligently sought discovery in this matter and instead embarked on discovery calculated to be costly rather than relevant.

First, Plaintiff attempts to justify its requested extension by portraying this matter as complex, multi-jurisdictional litigation.[1] However, Plaintiff ignores that this splintered litigation

---

[1] As described by Plaintiff, there are currently three matters pending relating to the same underlying facts: (1) the above-captioned action; (2) *inVentiv Health Consulting, Inc. v. Equitas Life Sciences, LLC, et al*, Civ. A. No.

PPAB 5227770v3

is the direct result of its own strategic decision to decline the offer to litigate these issues in a single federal action in North Carolina (which is Plaintiff's home forum and the exclusive venue Plaintiff specified in three of the four restrictive covenant agreements that were the subject of its original complaint). [D.E. 1 at ¶¶ 8, 14]. If having to conduct discovery across three separate lawsuits has created some difficultly for Plaintiff, that is a consequence of its own strategic choice and does not justify extending discovery in this matter for a further six months.

Second, Plaintiff has taken affirmative steps to make discovery more complicated and costly by resisting a common-sense cross-use agreement. Due to the factual overlap between the Actions, the defendants in all three actions proposed that discovery, including confidential information, should be shared across the three Actions, so that productions in one case would be considered responsive to correlated requests in another. The defendants believed this would reduce the amount of duplicative documents produced by all parties to the Actions. These negotiations continued for three months. [D.E. 36 ¶ 3]. During that time, Plaintiff made several identical productions in the three Actions and never distinguished between the different discovery requests by the various defendants. [D.E. 36]. Plaintiff treated its discovery obligations as equally met to all defendants in the three Action, but continued to refuse to extend the same courtesy to defendants for months. Finally, on September 27, 2019, as Plaintiff now concedes Plaintiff agreed that "the parties are authorized to share discovery materials across all three case[s]." [D.E. 43 at p. 10] Once this agreement was in place, Defendants produced, and supplemented prior productions with non-duplicative documents responsive to Plaintiff's requests in this case.. Plaintiff's long resistance to this common-sense stipulation demonstrates its lack of diligence. Moreover, this stipulation undermines Plaintiff's characterization of these

---

1781cv00660-D (Mass. Super. Mar. 2, 2017) (the "Massachusetts Action"); and (3) *inVentiv Health Consulting, Inc. v. Atkinson*, No. 18-cv-12560 (D.N.J. Aug. 8, 2018) (the "New Jersey Action") (collectively, the "Actions").

matters as being overly complex and demonstrates that the parties should be able to complete discovery in this matter shortly, but in no event later than January 31, 2020.

Third, Plaintiff has pursued objectionably overbroad and burdensome discovery throughout these cases. In the Massachusetts Action, Plaintiff issued 178 separate numbered requests for the production of documents to Equitas and another 134 to defendant Dennis Meletiche. Plaintiff issued a further 127 document requests to the individual defendant in the New Jersey action (which, eventually, was reduced to 51 by agreement). Finally, Plaintiff has also issued a combined total of **887** requests to the Defendants in this action including between 79 and 102 additional requests to each individual Defendant late on the afternoon of November 15, 2019. Defendants have cooperated throughout discovery, raising reasonable objections to Plaintiff's numerous, overbearing document requests, and producing over 18,000 pages of documents. [D.E. 43 at p. 6].

While Plaintiff has completed five depositions, only two of those witnesses are the Defendants in this case. Instead of focusing on deposing witnesses with knowledge of the claims and defenses, Plaintiff deposed a twenty-two year old Equitas software engineer who never worked for Plaintiff and who has "no idea, honestly" of what role Defendants play at Equitas or what Equitas does outside of the software he develops. Deposition of Christopher Diehl, attached as Exhibit A , pp. 6, 17. Plaintiff now seeks at least **twelve** more depositions, including, for unknown reasons, two accounting firms that performed services for Equitas. [D.E. 43 at p. 7]. Plaintiff cannot show good cause for this Motion because it has not tailored its discovery plan to the reasonable pursuit of its claims.

Fourth, Plaintiff cannot prove its own diligence because it has used discovery to harass, annoy, and vex the Defendants, rather than to discover facts relevant to its claims. For example,

PPAB 5227770v3

Plaintiff has conducted five depositions across the three cases to date. [D.E. 43 at p. 1]. In several of those depositions, Plaintiff asked irrelevant and inappropriate questions about Defendant French's personal life, including his romantic history and his vacation travel.

Moreover, while Plaintiff points to its 867,000 page document production as evidence of its supposed good faith, the opposite is true. [D.E. 43 at p. 6]. Plaintiff's document production includes many duplicates and hundreds of thousands of pages that are irrelevant to the present action. For example, Plaintiff appears to have produced wide swaths of work product of the individually-named defendants during the time they worked for Plaintiff, going back several years. In addition, Plaintiff has produced hundreds of pages of performance reviews for employees who have nothing to do with this action, including Lynn Forrest and Andrew Kwon, who are defendants in another matter pending before this Court. *See Campbell Alliance Group, Inc. v. Forrest, et al.*, No. 5:15-cv-00667 (E.D.N.C.)). It also has produced – and marked as "Confidential" – thousands of pages of spam email received by multiple former employees. Plaintiff cannot have reasonably considered this mountain of documents to be relevant to the instant action. Plaintiff's near million-page document dump seemingly has been for the purpose of forcing Equitas, and the other Defendants, to spend hours upon hours of time attempting to separate the relevant wheat from the extraneous chaff. This behavior does not evince the diligent conduct of discovery.

Further, many of the documents Plaintiff has produced consist of blurry images that are difficult to read. See, e.g., Exhibit B. When confronted with this shortcoming, and having been informed that it was a production-wide issue, Plaintiff offered to swap out illegible copies of documents upon specific request from the various defendants. This is not an efficient or effective solution to Plaintiff's failure to produce fully legible copies of documents given the

PPAB 5227770v3

rampant document quality issues throughout its enormous production. Indeed, even after having been informed of the widespread document image quality issues of its productions (which may affect over 11,000 separate documents, totaling over approximately 430,000 pages of Plaintiff's overall production), Plaintiff *continued* to produce documents in illegible format. Its most recent production, made November 4, again contains pages upon pages of documents that are difficult, if not impossible, to read. Clearly, Plaintiff is not concerned about meeting its discovery obligations and exchanging relevant, readable materials but instead is willing to do whatever it can to make the process as difficult and time-consuming for Defendants as it can. This is an abuse of the discovery process.[2]

Fifth, Plaintiff has continued to withhold critical facts from Defendants. Despite more than a year of discovery in this matter, Plaintiff still has not identified with any specificity the confidential information that it contends is at issue in this litigation. If Plaintiff has truly committed "at least half a dozen attorneys working on inVentiv's behalf to assemble its document production" on a daily basis, [D.E. 43 at p. 8], it should have been able to meet its fundamental obligation of identifying the supposed trade secret or confidential information at issue. To date, Plaintiff has only provided general descriptions of broad categories of documents and information that it contends are confidential but have not identified specific documents contained in its 867,000 page production. Therefore, Defendants remain in the dark regarding the crux of Plaintiff's supposed claims.

---

[2] That Defendants have not sought the Court's intervention yet on the various discovery abuses described herein does not detract from their seriousness, but rather reflects a desire on Defendants' part not to multiply the proceedings in this case. Nevertheless, Defendants reserve their rights to seek this Court's intervention as necessary on discovery issues.

PPAB 5227770v3

## IV. CONCLUSION

Despite having over twelve months to complete discovery in this matter, Plaintiff asks this Court for an extraordinary six-month extension of the discovery deadline. Defendants fear that Plaintiff would use this time to continue its demands for excessive and unnecessary discovery in order to impose the greatest costs possible on Defendants. Indeed, Plaintiff has already announced its intent to take at least twelve more depositions and, late on November 15, 2019, issued dozens of additional requests for the production of documents to each of the Defendants. At some point, this all must end. Defendants are amenable to a 45-day extension of the discovery period, through January 31, 2020, so that the parties may complete reasonable discovery, including the depositions that Defendants have noticed or will notice. Anything more would embolden Plaintiff to continue its excessive and unnecessary discovery conduct. Therefore, Defendants respectfully request that the Court deny Plaintiff's Motion, or, in the alternative, enter an order extending the discovery deadline to no later than January 31, 2020.

Respectfully submitted this 21st day of November, 2019.

/s/ Melanie Black Dubis
Melanie Black Dubis
N.C. State Bar No. 22027
melaniedubis@parkerpoe.com
Tory Ian Summey
N.C. State Bar No. 46437
torysummey@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
Post Office Box 389
Raleigh, North Carolina 27602-0389
Tel: (919) 828-0564
Fax: (919) 834-4564
*Attorney for Defendants*

7

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY THE DISCOVERY PLAN** was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send notice of the same addressed as follows:

> F. Marshall Wall
> CRANFILL SUMNER & HARTZOG, LLP
> Post Office Box 27808
> Raleigh, NC 27611-7808
> Email: mwall@cshlaw.com
>
> Stephen D. Riden
> BECK REED RIDEN LLP
> 155 Federal Street, Suite 1302
> Boston, Massachusetts 02110
> Email: sriden@beckreed.com
> *Counsel for Plaintiff*

This 21th day of November, 2019.

/s/ Melanie Black Dubis
Melanie Black Dubis
N.C. State Bar No. 22027
melaniedubis@parkerpoe.com
Tory Ian Summey
N.C. State Bar No. 46437
torysummey@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
Post Office Box 389
Raleigh, North Carolina 27602-0389
Tel: (919) 828-0564
Fax: (919) 834-4564
*Attorney for Defendants*

8