IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-295-D

INVENTIV HEALTH
CONSULTING, INC.,

      Plaintiff,

v.

ALAN D. FRENCH, JR., *et al.*,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)

O R D E R

This matter is before the court on the following motions: (1) Plaintiff's motion to compel

discovery from Defendant Alan D. French, Jr. ("Defendant French" or "French"), [DE-33],

(2) Defendant French's motion to seal an exhibit to the Declaration of Melanie Black Dubis, [DE-

38], (3) Plaintiff's motion for an extension of time to complete discovery, [DE-42],

(4) Defendants' motion to seal an exhibit to their response in opposition to Plaintiff's motion for

an extension of time, [DE-48], (5) Plaintiff's motion to compel electronically stored information

("ESI") from Defendants, [DE-52], and (6) Defendants' motion to seal exhibits to their response

in opposition to Plaintiff's motion to compel ESI, [DE-57]. Defendant French responded to

Plaintiff's motion to compel, [DE-35], Defendants responded to Plaintiff's motion for an extension

of time, [DE-45], and Defendants responded to Plaintiff's motion to compel ESI, [DE-54]. The

court held a telephonic hearing on February 10, 2020. The issues have been fully briefed, and the

motions are ripe for decision. For the reasons stated below, Plaintiff's motion to compel is allowed

in part and denied in part, Plaintiff's motion to compel ESI is allowed, Defendants' motions to seal

are allowed, and Plaintiff's motion for an extension of time is allowed.

# I. BACKGROUND

This action arises from Plaintiff's allegations that Defendants left their employment with Plaintiff to start a competing business in violation of an employment agreement. Compl. [DE-1] at 1. Plaintiff has asserted claims of breach of employment contract, tortious interference with contractual relations, tortious interference with prospective future contracts, trade secret misappropriation, unfair or deceptive trade practices, civil conspiracy, breach of fiduciary duty, and constructive fraud. *Id.* at 22–34.

According to the complaint, Plaintiff is a strategic management consulting business in the pharmaceutical and biotech industry. *Id.* at 5. Defendant French was employed by Plaintiff as a managing director, and the other Defendants worked on French's team. *Id.* at 7. Their role was to build client relationships using Plaintiff's confidential information, particularly with respect to Clients A and B, two of Plaintiff's largest clients. *Id.* at 7–8. Plaintiff and Defendants entered into employment contracts that protect Plaintiff's confidential information and contain noncompete agreements. *Id.* at 9–11. The "non-competition period" is defined in the contracts as the twelve month period following termination of employment, and the "non-solicitation period" is defined as the eighteen month period following termination of employment. [DE-1-1] at 3. Additionally, the contracts provide that the non-competition and non-solicitation periods do not run during any time period when the employee is not in compliance with the terms of the contract. *Id.*

The complaint alleges further that while still employed by Plaintiff, Defendants covertly launched a new business, Equitas. Compl. [DE-1] at 12. In early 2016, Plaintiff saw a decline in revenue from Clients A and B. *Id.* at 15. French reported to Plaintiff that Client A's need for consulting services had diminished; however, according to Plaintiff, French was performing work for Client A on behalf of Equitas. *Id.* In February 2016, French switched to a part-time schedule

at inVentiv, and he resigned from inVentiv in July 2016. *Id.* The other Defendants also resigned serially in 2016, each citing personal reasons for their resignations. *Id.* at 16–17. Defendants all began officially working for Equitas soon after their resignations from inVentiv. *Id.* at 17.

Plaintiff discovered Equitas's work for Client A when Client A mistakenly sent a calendar invitation and email to French's inVentiv email address in January 2017. *Id.* at 18. Plaintiff conducted a forensic analysis of Defendants' inVentiv computers and discovered that two days before French's resignation, French accessed confidential information and inserted a USB device into the computer. *Id.* at 19. Plaintiff alleges that Defendants have breached their employment agreements by diverting clients from inVentiv to Equitas and by using inVentiv's confidential information. *Id.* at 20.

Plaintiff first brought a suit against French, four other individual defendants, and Equitas in Massachusetts state court (the "Massachusetts action"). Def.'s Resp. [DE-35] at 1. Several individual defendants were dismissed, and Plaintiff filed the present action in this federal district. *Id.* The Massachusetts action remains pending against one individual defendant and Equitas. *Id.* Plaintiff also filed an action in federal court in New Jersey (the "New Jersey action") against an individual defendant. *Id.* In order to reduce duplicity in discovery, the Defendants in the present action, the Massachusetts action, and the New Jersey action proposed that discovery could be shared by all litigants in the three cases. *Id.* at 2–3. Plaintiff agreed to Defendants' proposal on September 27, 2019. *Id.* at 3.

On April 2, 2019, Plaintiff served the Requests for Production of Documents ("RFP") at issue here on French. *Id.* at 2; [DE-33-1]. Following French's response, Plaintiff's counsel sent a letter on August 20, 2019, outlining purported deficiencies in his discovery responses and requesting counsel's availability to meet and confer to discuss the various responses. [DE-34-1].

The parties conferred by phone on August 30, 2019, and French's counsel supplemented French's objections and answers on September 23, 2019. [DE-34-2]. On September 26, 2019, the Massachusetts Superior Court ruled in the Massachusetts action that Equitas must produce documents regarding Equitas's agreements with Clients A and B as well as Equitas's financial information. [DE-36-5]. Plaintiff filed the instant motion to compel on October 1, 2019. [DE-33]. Plaintiff's motion seeks an order compelling responses to Requests 3, 7–10, 15, 31, 33, 35–41, 43–44, 54–57, 60, 70–72, 77, 78, 83–85, 100–104, 107–123, 126, and 129. Pl.'s Mot. [DE-33] at 1. However, Plaintiff's memorandum discusses only Requests 31, 54, 55, 77, 78, 85, 100–04, 107–20. Pl.'s Mem. [DE-34] at 7–11. From the parties' communications, it appears that the disputes regarding Requests 3, 7–10, 33, 35–41, 43, 44, 56, 57, 60, 70–72, 83, 84, 121–23, 126, and 129 have been resolved. [DE-34-2] at 2–4. Accordingly, Requests 31, 54, 55, 77, 78, 85, 100–04, 107–20 are presently disputed in Plaintiff's first motion to compel and discussed below, as well as French's general objections to the RFP.

## II. STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the general rule regarding the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that

4

bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). However, the Federal Rules also provide that

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240 (citation omitted). Accordingly, as the party resisting discovery, it is French's burden to show why discovery should be denied.

## III. DISCUSSION

### A. Plaintiff's Motions to Compel

The parties dispute five issues regarding French's response to the RFP: (1) whether the deadline for production of documents was September 20, 2019; (2) whether French is in

5

possession, custody, or control of documents contained in his Equitas corporate email account; (3) whether French must produce documents regarding projects commenced after July 25, 2017; (4) whether non-privileged, responsive documents to Requests 31, 54, 55, 77, 78, 85, 100–04, 107–20 must be produced; and (5) whether Defendants must produce ESI for inspection by an independent forensic vendor pursuant to a protocol proposed by Plaintiff.

### 1. The Deadline for Production

Plaintiff contends that during the parties' August 30, 2019 meet and confer, French's attorney pledged to produce responsive documents by September 20, 2019. Pl.'s Mem. [DE-34] at 5. Accordingly, Plaintiff argues, French should produce responsive documents immediately. *Id.* Plaintiff cites a letter from French's counsel dated September 12, 2019; however, nowhere in the letter does French's counsel pledge to produce responsive documents by a certain date. [DE-34-2]. French claims that he did not agree to a production date of September 20, 2019, and Plaintiff's "incorrect belief" that he so agreed "was corrected." Def.'s Resp. [DE-35] at 4.

Given the ambiguity regarding whether the parties agreed to a production date of September 20, 2019, the court declines to order French to produce responsive documents immediately. Instead, the deadline for French to produce the documents discussed below is by no later than twenty-one days of this order.

### 2. French's Possession, Custody, or Control of His Equitas Email Account

French contends that documents contained in his Equitas corporate email account are not within his possession, custody, or control, and Plaintiff should either subpoena those documents from Equitas or conduct discovery in the Massachusetts action, in which Equitas is a party. Def.'s Resp. [DE-35] at 5–6. Plaintiff contends that French has possession, custody, or control of the documents in his Equitas email account because French is a founding member and current

employee of Equitas, and he has used his Equitas email account to conduct the business he is alleged to have done in breach of his employment agreement. Pl.'s Mem. [DE-34] at 5–6.

Fed. R. Civ. P. 34(a)(1) limits production to documents that are "in the responding party's possession, custody, or control." To determine whether documents belonging to a non-party are in the possession, custody, or control of a party, this court has utilized a legal-right-to-control test. *See Ultra-Mek, Inc. v. Man Wah (USA), Inc.*, 318 F.R.D. 309, 312 (M.D.N.C. Dec. 28, 2016); *In re: NC Swine Farm Nuisance Litigation*, No. 5:15-CV-13-BR, 2016 WL 3661266, at *3 (E.D.N.C. July 1, 2016); *Suh v. HCA-The Healthcare Co.*, No. 7:02-CV-166-F, 2010 WL 11622620, at *2 (E.D.N.C. May 11, 2010); *Bleecker v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726, 739 (E.D.N.C. 2000). Courts examine the degree of authority the responding party possesses over the non-party. *See Ultra-Mek*, 318 F.R.D. at 313; *Swine Farm Nuisance Litigation*, 2016 WL 3661266, at *4. It is the requesting party's burden to show that the responding party has control over the documents. *Prodigious Ventures, Inc. v. YBE Hosp. Grp., LLC*, No. 5:14-CV-433-F, 2016 WL 1248806, at *4 (E.D.N.C. Mar. 25, 2016) (citations omitted). Accordingly, it is Plaintiff's burden to show that French has sufficient control over Equitas such that he has the legal right to control the documents in the email account. *See id.*

During the February 10, 2020 telephonic hearing, Plaintiff's counsel stated that Equitas has begun producing documents in the Massachusetts action, Plaintiff now has access to the documents in the Equitas email account, and the Massachusetts court entered an order compelling production of ESI. Defense counsel agreed that there is little need for the court to address the issue here when Equitas is producing the documents in the Massachusetts action and is subject to a subpoena in this case. The parties appear to agree that the court need not presently decide whether French has possession, custody, or control of his Equitas email account. Accordingly, the issue is moot.

### 3. French's production is not limited to documents regarding projects begun prior to July 25, 2017.

French contends that the non-compete, non-solicitation, and non-disclosure provisions of his employment contract with inVentiv were limited to the period of time extending twelve months after the end of his employment. Def.'s Resp. [DE-35] at 6. French reasons that because his employment ended on July 25, 2016, the scope of production does not extend beyond July 25, 2017. *Id.* Plaintiff contends that the non-solicitation period extends for eighteen months following the end of French's employment, French's confidentiality obligations do not expire, there is a tolling provision in the contract, and some of Plaintiff's claims do not depend upon the contract; therefore, the July 25, 2017 cut-off date is baseless. Pl.'s Mem. [DE-34] at 6–7.

According to the employment agreement attached to the complaint, there is no time limit on the confidentiality and non-disclosure provisions. [DE-1-1] at 2. The non-competition period ends twelve months following termination, but it does not run during any time period in which the employee is not in compliance with the agreement. *Id.* at 3. The non-solicitation period ends eighteen months following termination and also contains a tolling provision. *Id.*

Plaintiff has persuasively offered four reasons why the July 25, 2017 cut-off date for production should not shape the scope of the discovery requests given the complaint allegations: (1) the confidentiality and non-disclosure provisions are not limited in time, (2) the non-solicitation period extends eighteen months following termination, (3) the non-competition and non-solicitation periods are tolled during any period of noncompliance, and (4) some of Plaintiff's claims are not based on the employment contract at all. It is French's burden to show why discovery should be denied for projects begun after July 25, 2017, and he has not met his burden here. *See Mainstreet Collection*, 270 F.R.D. at 240. There is no reason to limit discovery to projects begun prior to July 25, 2017 when many of Plaintiff's claims may be based, at least in

part, on projects begun after that date. Accordingly, French's production is not limited to documents regarding projects begun prior to July 25, 2017.

### 4. The Disputed Requests

Plaintiff's first motion to compel identifies Requests 3, 7–10, 15, 31, 33, 35–41, 43–44, 54–57, 60, 70–72, 77, 78, 83–85, 100–104, 107–123, 126, and 129 as deficient. Pl.'s Mot. [DE-33] at 1. However, only Requests 31, 54, 55, 77, 78, 85, 100–04, 107–20 are discussed in the parties' briefs and actually appear to be in dispute. Pl.'s Mem. [DE-34] at 7–11; Def.'s Resp. [DE-35] at 7–11. Additionally, Plaintiff's motion to compel ESI discusses Requests 77 and 78. [DE-52] at 3–10.

### Requests 31, 101, and 102

These requests seek documents identifying the employees and members of Equitas. [DE-33-1] at 16–17, 51–52. French objected on the grounds that those requests are vague, overbroad, unduly burdensome, and irrelevant. *Id.* Plaintiff contends that the identities of Equitas's employees and members are relevant to its claims because it alleges that its own former employees performed work for Equitas and that French solicited Plaintiff's employees to work for Equitas in violation of the non-solicitation provision in the employment agreement. Pl.'s Mem. [DE-34] at 8. French responds that the identities of Equitas employees who were not formerly inVentiv employees are irrelevant. Def.'s Resp. [DE-35] at 7.

The basis of several of Plaintiff's claims is its allegation that its own employees defected to Equitas in violation of their employment contracts; accordingly, the identities of any former inVentiv employees who work or have worked for Equitas is plainly relevant. However, as French notes, the identities of any Equitas employees who were never inVentiv employees are likely not relevant to Plaintiff's claims. Accordingly, French is ordered to produce non-privileged

documents that are responsive to Requests 31, 101, and 102, limited to those employees or members of Equitas who were once employed by inVentiv, and in French's possession, custody, or control.

**Request 55**

This request seeks material "sufficient to identify . . . the family medical issues that were purportedly causing [French] stress" when he requested a leave of absence from inVentiv. [DE-33-1] at 28. Plaintiff contends that the documents are relevant because Plaintiff intends to show that French's family's medical issues were a pretext for his leave of absence, and in fact he worked for Equitas during that time. Pl.'s Mem. [DE-34] at 8. French responds that he has already informed Plaintiff's counsel that his family member has a serious and advanced condition of multiple sclerosis and that Plaintiff is not entitled to medical documents or records from a non-party. Def.'s Mem. [DE-35] at 7–8.

Documents regarding the medical issue appear relevant to Plaintiff's claims, and French does not contest that the documents are relevant. Instead, he responds that no case law supports Plaintiff's claim to medical records of a third party. Documents responsive to this request, however, would appear to include those other than medical records from a non-party. As the party resisting discovery, it is French's burden to show why discovery should be denied, and his response is inadequate. Documents sufficient to identify French's family member's medical issues appear relevant, and French has not argued that they are privileged or disproportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) (allowing discovery on nonprivileged, relevant matters that are proportional to the needs of the case). Accordingly, French is ordered to produce responsive documents to Request 55.

**Request 85**

This request seeks telephone records that may concern any of the facts or circumstances raised by the pleadings. [DE-33-1] at 41. Plaintiff contends that the phone records are relevant because French allegedly used his personal phone to communicate with former inVentiv employees and others about Equitas. Pl.'s Mem. [DE-34] at 9. French contends that the request is vague, overbroad, and unduly burdensome because it is not limited for privilege, it is not limited to relevant parties, and the existence of communications alone would not establish wrongdoing. Def.'s Resp. [DE-35] at 8. French analogizes this case to *D'Addario v. Geller*, where the Fourth Circuit held that the district court did not abuse its discretion in denying a motion to compel the defendants to produce telephone records. 129 F. App'x 1, 6 (4th Cir. 2005). The district court's reasoning in *D'Addario* was that the request was overbroad and the records would be insufficient by themselves to establish the claim. *Id.*

However, the Fourth Circuit in *D'Addario* held only that the district court did not abuse its discretion, and courts have "'substantial discretion' to grant or deny motions to compel discovery." *English*, 2014 WL 555661, at *4 (quoting *Lone Star*, 43 F.3d at 929). Here, the request is not overbroad because it is tailored to phone records that concern the facts and circumstances raised by the pleadings. Additionally, the fact that the phone records do not, on their own, establish wrongdoing does not make them undiscoverable; instead, the standard for discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether the phone records are relevant—not whether they are independently sufficient to establish a claim—is the question, and "relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Mainstreet Collection*, 270 F.R.D. at

11

240 (quoting *Oppenheimer Fund.*, 437 U.S. at 351). The record of phone calls and text messages may at least reasonably lead to other matter that could bear on an issue in the case; for instance, Plaintiff may choose to question French during a deposition about the timing, frequency, and subject matter of his calls to the other Defendants. Given the allegations that French surreptitiously conspired with others to leave inVentiv and start a competing business, a record of French's communications is relevant, and because the request is confined to records that may concern the facts and circumstances raised by the pleadings, it does not appear to be overbroad. French is therefore ordered to produce non-privileged responsive documents to Request 85.

**Request 100**

This request seeks marketing materials delivered to prospective customers of Equitas. [DE-33-1]. French contends that the request should be limited to marketing materials delivered to companies that have some prior relationship with inVentiv. Def.'s Resp. [DE-35] at 9. Plaintiff contends that all marketing materials would reveal the extent to which Equitas unlawfully competed with inVentiv. Pl.'s Mem. [DE-34] at 9.

Because the employment agreement appears to prohibit solicitation of and the provision of services to any client or "actively targeted prospect" of inVentiv, Request 100 may be reasonably limited to marketing materials delivered to present or past clients or actively targeted prospects of inVentiv. A request for all marketing materials is overbroad because the sending of materials to non-clients or actively targeted prospects of inVentiv would not appear to violate the non-solicitation provision of the employment contracts, thus the materials would not be relevant to inVentiv's claims. Accordingly, French is ordered to produce non-privileged documents regarding marketing materials delivered to prospective customers of Equitas, limited to those entities who

are or were clients or actively targeted prospects of inVentiv, to the extent such documents are French's possession, custody, or control.

**Request 104**

This request seeks French's federal tax returns for each year from 2015 to the present. [DE-33-1] at 53. French objects on the grounds that the information sought is "personal and sensitive" and irrelevant to the claims and defenses in this matter. *Id.* "Federal case law recognizes a qualified privilege limiting the disclosure of tax returns." *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2010 WL 2232261, at *2 (E.D.N.C. June 2, 2010) (citing *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, No. 1:02-CV-146, 2004 WL 444570, at *2 (M.D.N.C. Feb. 24, 2004)). "Under this standard, tax returns are discoverable if they are relevant and the information is not available from other sources." *Id.* (citing *Interstate Narrow Fabrics, Inc.*, 2004 WL 444570, at *2). "The requesting party bears the burden of showing relevance and the resisting party the burden of showing availability from other sources." *Id.* (citing *Interstate Narrow Fabrics, Inc.*, 2004 WL 444570, at *2). Plaintiff contends that the tax returns are relevant because they would show when French began earning income from Equitas and his annual compensation, which would inform inVentiv's calculation of damages. Pl.'s Mem. [DE-34] at 9. French contends the tax returns are irrelevant because they do not show the date French began working for Equitas, and Equitas's profits, not French's personal income, would potentially be relevant to a calculation of inVentiv's damages. Def.'s Resp. [DE-35] at 10. Additionally, French contends that the information regarding his start date is available from other sources because Plaintiff may question French about it during a deposition or request corporate documents in Equitas's custody. *Id.*

For breach of a non-compete or similar agreement, the plaintiff is entitled to damages "sufficient to give it the benefit of its bargain, i.e., to put it in the place it would have been had the

[defendants] not breached." *W. Insulation, LP v. Moore*, 242 F. App'x 112, 119 (4th Cir. 2007); *Clark Material Handling Co. v. Toyota Material Handling U.S.A., Inc.*, No. 3:12-CV-510-MOC, 2015 WL 3514339, at *1 (W.D.N.C. June 4, 2015) (discussing damages for unfair competition, unfair and deceptive trade practices, tortious interference with a contract, and tortious interference with a prospective economic advantage, all in violation of North Carolina law); *Keith v. Day*, 81 N.C. App. 185, 195, 343 S.E.2d 562, 568 (1986) (discussing damages for breach of a covenant not to compete). When employees of a plaintiff breach a non-compete agreement by going to work for a competitor, the plaintiff must show that it suffered damages beyond what it would have lost had the employees "elected to withdraw from the labor market altogether," most helpfully by showing "identifiable or specific lost contracts" to the competitor. *Hunter Grp., Inc. v. Smith*, 9 F. App'x 215, 220 (4th Cir. 2001) (applying Georgia law) (citation omitted); *see also Moses H. Cone Mem'l Health Servs. Corp. v. Triplett*, 167 N.C. App. 267, 275, 605 S.E.2d 492, 497 (2004) (applying North Carolina law and discussing lost profits). Here, it is not clear how French's personal income is relevant to a calculation of inVentiv's damages. Equitas's revenue from specific clients and contracts would presumably be relevant, but French's personal income would not show what inVentiv's revenue would have been had French not allegedly breached the contract. Additionally, the tax returns would likely only show the year, not the specific date, on which French began earning income from Equitas. Accordingly, the requested tax returns do not appear to be relevant.

Even if the tax returns were relevant, the information Plaintiff seeks from the returns appears to be available from other sources. Plaintiff may question French in a deposition regarding his Equitas start date, and it may subpoena information from Equitas regarding its revenue from specific contracts as well as French's compensation, if desired, in order to show its damages.

Because the tax returns are likely not relevant and, even if they were, the information is available from other sources, French is not ordered to produce his tax returns. *See SMD Software*, 2010 WL 2232261, at *2.

**Requests 107–115 and 118–20**

These requests seek Equitas's check registers, deposit slips, invoices, copies of checks, and receipts of payment relating to services rendered, as well as documents concerning loans made to Equitas, investments made in Equitas, fees charged by Equitas for its services, Equitas's gross revenue, net profits, profit and loss statements, financial statements, business plans, payroll records, and accounting books and records. [DE-33-1] at 54–61. According to French, in the Massachusetts action, the court has ordered Equitas to produce certain financial information, including payment and profit information regarding Clients A and B. [DE-36-5]. Moreover, French contends that he does not have possession, custody, or control of documents responsive to Requests 107–115 and 118–20; the Massachusetts court's order would likely resolve the dispute; and, if it did not, the parties should reconvene and further discuss the issue. Def.'s Resp. [DE-35] at 10. Plaintiff asserts that the Requests seek relevant information. Pl.'s Mem. [DE-34] at 10. It does not appear that French contests relevancy, and as the party resisting discovery, it is French's burden to show why discovery should be denied; accordingly, French is ordered to produce any non-privileged responsive documents to Requests 107–115 and 118–20 to the extent that they are within his possession, custody, or control.

**Requests 54, 55, 77, 78, 103, 104, and 107–20**

These requests seek information regarding French's family member's medical issues; demand that French produce computers and removable media for inspection; and seek Equitas's tax returns, French's tax returns, and Equitas's financial and business information. [DE-33-1] at

15

27–28, 37–38, 52–62. Plaintiff asserts that any objection to those requests on the grounds that they seek personal or confidential information is baseless because the protective order entered in this case governs the production of confidential information. Pl.'s Mem. [DE-34] at 11–12. French responds that the issue is not confidentiality but rather that those requests seek documents that belong to a non-party, are irrelevant, or are not in French's possession, custody, or control. Def.'s Resp. [DE-35] at 11. The relevancy of French's family member's medical issues, French's tax returns, and Equitas's financial information is discussed above. The request for French to produce his computers and removable media for inspection is discussed below in light of Plaintiff's motion to compel ESI. [DE-52]. Accordingly, the parties' issues regarding Requests 54, 55, 77, 78, 103, 104, and 107–20 are discussed elsewhere, and there does not appear to be a remaining dispute regarding confidentiality.

### 5. Production of ESI

Requests 77 and 78 require Defendants to produce their own computers and removable media for inspection by a forensics computer expert pursuant to a mutually-agreeable protocol. [DE-33-1] at 37–38. Defendants objected on the grounds that the requests seek highly personal and sensitive information that is irrelevant. *Id.* The parties conferred in August and September 2019, and Plaintiff proposed a draft ESI protocol. Pl.'s Mem. [DE-53] at 5. The parties discussed the protocol on October 2, 2019 but were unable to resolve their differences. *Id.* Plaintiff's proposed protocol provides that Plaintiff will pay the cost of the forensic analyses; Plaintiff's counsel and Defendants' counsel will work in good faith to reach agreed-upon search terms and parameters; and Defendants' counsel will review the results of the analysis first and will have ten business days to object to the production of documents based on privilege, confidentiality, privacy, or irrelevancy. [DE-53-1]. The protocol further provides that if the parties cannot reach an

agreement regarding Defendants' objections to production of certain documents, then the disputed material may be tendered to the court for in-camera review. *Id.* Plaintiff contends that the protocol adequately addresses Defendants' objections because it allows counsel to agree upon search terms that will return relevant documents, Plaintiff will bear the cost of the analysis, and Defendants' counsel will review the documents first and may object to the disclosure of privileged or confidential information. Pl.'s Mem. [DE-53] at 10. Defendants contend that the requests are overbroad, seek sensitive personal information that is irrelevant, are disproportionate to the issues of the case because the information may be obtained through less intrusive means, are cumulative and unnecessary, and amount to a fishing expedition based on pure speculation. Def.'s Resp. [DE-54] at 4–10.

Discovery is permitted on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," but a party need not produce ESI that is "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(1), (2)(B). Defendants do not appear to contend that the ESI is not readily accessible; rather, Defendants argue that the requests are overbroad and seek irrelevant information. Plaintiffs contend that Defendants' devices likely contain communications between the Defendants regarding Equitas and their defection from inVentiv, communications with inVentiv's clients, and confidential information taken from inVentiv. Pl.'s Mem. [DE-53] at 7–8. Plaintiff alleges that in September 2015, French asked the other Defendants for their personal email addresses, and Defendants exchanged emails and text messages with each other on their personal devices. *Id.* Plaintiff further contends that because Defendants defected from inVentiv covertly, it is likely they used their personal devices, rather than their inVentiv devices, to perform work on behalf of Equitas while they were still employed by inVentiv. *Id.*

17

Relevancy is broadly construed, *Mainstreet Collection*, 270 F.R.D. at 240, and Plaintiff has shown that the requests seek relevant information. As for Defendants' concerns regarding the overbreadth and proportionality of the inspection, Plaintiff's protocol requires the parties to confer in good faith and agree upon search terms and parameters before the search is conducted. [DE-53-1] at 2. A narrowing of search terms prior to the search should address Defendants' relevancy and overbreadth concerns. *See Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 750 (E.D.N.C. 2017) (holding that "the court lacks sufficient information to address these issues of duplication and proportionality," but "plaintiffs indicate their willingness to narrow the search terms," and directing the parties to confer and agree upon acceptable search terms); *Baclawski v. Mountain Real Estate Capital LLC*, No. 3:15-CV-417-RJC-DCK, 2016 WL 3381258, at *3 (W.D.N.C. June 10, 2016) ("Although the undersigned is not convinced Plaintiff should be compelled to allow Defendant to completely image her phones and computers, Defendant should be able to obtain specific information from Plaintiff's devices that is helpful to the case."). The proposed protocol provides that Defendants will review the produced material first, and if Defendants believe that privileged, confidential, or irrelevant material is produced, they may object before the material is produced to inVentiv. [DE-53-1] at 2–3. If the parties cannot resolve the objections, they will be subject to court review. *Id.* at 3. The proposed protocol appears to have sufficient safeguards to address Defendants' relevancy and proportionality concerns and provides recourse if additional issues arise. *See Rosinbaum*, 238 F. Supp. 3d at 750. Defendants raise no issues opposing the proposed protocol. Accordingly, Plaintiff's motion to compel ESI is allowed, and the court adopts Plaintiff's proposed protocol for examination of Defendants' devices. [DE-53-1].

## B. Defendants' Motions to Seal

French seeks to maintain under seal Exhibit D to the Declaration of Melanie Dubis, [DE-37], filed in support of his response in opposition to Plaintiff's motion to compel. Additionally, Defendants seek to maintain under seal Exhibits A and B to their memorandum in opposition to Plaintiff's motion to modify the discovery plan as well as Exhibits 1 and 2 to their memorandum in opposition to Plaintiff's motion to compel ESI. [DE-46, -47, -55, -56]. Plaintiff has not responded to the motions to seal, and the time for doing so has expired.

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The Fourth Circuit has directed that before sealing publicly filed documents the court must first determine if the source of the public's right to access the documents is derived from the common law or the First Amendment. *Stone v. Univ. of Md.*, 855 F.2d 178, 180 (4th Cir. 1988). The fact that the documents sought to be sealed are subject to a protective order by the court does not relieve the parties or the court from the obligation to comply with the Fourth Circuit's sealing regimen. *See Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 679–80 (E.D.N.C. 2003); *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys.*, No.1:05-CV-955, 2011 WL 2413404, at *5 (M.D.N.C. Jun. 10, 2011) (citations omitted). "[T]he common law presumption in favor of access attaches to all 'judicial records and documents,' [while] the First Amendment guarantee of access has been extended only to particular judicial records and documents[,]" such as those filed in connection with a motion for summary judgment. *Stone*, 855 F.2d at 180 (quoting *Nixon*, 435 U.S. at 597 & citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). Here, the documents sought to be sealed have been filed by Defendants in connection with their opposition to Plaintiff's motions to compel and motion to

modify the discovery plan, and thus the documents play a role in the adjudication process. *See In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) ("[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights.") (citations omitted); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."). Furthermore, the documents at issue are not subject to the First Amendment right of access because they are related to a dispute over the scope of discovery and a dispute over case management deadlines. *See 360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. 5:14-CV-310-F, 2016 WL 3030166, at \*7 n.6 (E.D.N.C. May 25, 2016) (applying the "experience and logic" test, which considers whether the proceeding benefits from public access, in determining when the First Amendment right to access applies); *Covington v. Semones*, No. 7:06-CV-00614, 2007 WL 1170644, at \*2 (W.D. Va. Apr. 17, 2007) ("In this instance, as the exhibits at issue were filed in connection with a non-dispositive motion, it is clear there is no First Amendment right of access.").

The presumption of access under the common law is not absolute, and its scope is a matter left to the discretion of the district court. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004), cert. denied, 544 U.S. 949 (2005). The presumption "'can be rebutted if countervailing interests heavily outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" *Id.* (quoting *Rushford*, 846 F.2d at 253). "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would

enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.'" *Id.* (quoting *In re Knight Publ. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)). Finally, prior to sealing a judicial record the court must (1) give the public notice of the request to seal and a reasonable opportunity to challenge it; (2) consider less drastic alternatives to sealing; and (3) "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." *In re Knight Pub. Co.*, 743 F.2d at 235 (citation omitted).

Here, the documents consist of materials considered confidential by the filing parties, subject to a protective order of the court. Although not dispositive, this factor does speak to the purported nature of the documents, which contain sensitive business information not available to the general public, including the identities of Clients A and B. Based on this showing, the court finds that the presumption of access has been overcome.

In addition, the public must be given notice of a request to seal and a reasonable opportunity to challenge it. *In re Knight Publishing Co.*, 743 F.2d at 235. Here, Defendants' motions were filed on October 15, November 21, and December 11, 2019. No opposition to the motions have been filed by any party or non-party despite a reasonable opportunity to do so.

Finally, the court is obligated to consider less drastic alternatives to sealing, and where a court decides to seal documents, it must "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." *Id.* Because, as described, the documents in question contain confidential information and are not generally available to the public, the court finds that alternatives to sealing do not exist at the present time.

Accordingly, Defendants' motions to seal [DE-38, -48, -57] are ALLOWED and the following documents shall remain under seal in accordance with Local Civil Rule 79.2: Exhibit D to the Declaration of Melanie Black Dubis, [DE-37]; Exhibits A and B to Defendants' response in opposition to Plaintiff's motion for an extension of time to complete discovery, [DE-46, -47]; and Exhibits 1 and 2 to Defendant's memorandum in opposition to Plaintiff's motion to compel ESI, [DE-55, -56].

### C. Plaintiff's Motion for an Extension of Time

Plaintiff requests that the court extend the deadline for fact discovery from December 15, 2019 to June 15, 2020 and adjust all other deadlines accordingly. [DE-42]. Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." The good cause standard of Rule 16(b)(4) focuses on the moving party's diligence, rather than prejudice to the non-movant or bad faith. *Halpern v. Wake Forest Univ. Health Scis.*, 268 F.R.D. 264, 274 (M.D.N.C. 2010) (citation omitted).

Plaintiff contends there is good cause to modify the scheduling order because this case is a complex, multi-jurisdictional matter. [DE-43] at 1. Plaintiff intends to take more than a dozen additional depositions, it has already produced more than 865,000 pages in discovery, and a defendant produced documents as recently as November 5, 2019. *Id.* at 2. Plaintiff alleges that Defendants' document production has been halting and minimal and that Defendants have deployed a "run-out-the-clock" strategy in conducting discovery. *Id.* at 6, 9. Plaintiff acknowledges that a six month extension is substantial, but it states that it has moved to extend the discovery deadline in the New Jersey and Massachusetts actions and that this request will be its last motion for an extension of the fact discovery deadline. *Id.* at 1–2, 8.

Defendants respond that they do not oppose an extension of the discovery deadline to January 31, 2020, but a six-month extension is unnecessary. [DE-45] at 2. Defendants contend that Plaintiff has over-litigated the case by splintering it into three separate actions, serving overbroad and cumulative discovery requests, producing hundreds of thousands of irrelevant documents, inefficiently conducting depositions, producing illegible documents, and concealing which confidential information and trade secrets are at issue. [DE-45] at 2–6.

In summary, Plaintiff accuses Defendants of hindering the discovery process, and Defendants accuse Plaintiff of over-complicating it. Nonetheless, whether either party has thus far acted in bad faith is not at issue in determining whether good cause exists for this extension of time, as Plaintiff requested the extension before the deadline of December 15, 2019 passed. Plaintiff acknowledges that six months is a lengthy extension, and because more than one year has already passed since the court's October 20, 2018 scheduling order, [DE-22], the court agrees that an additional six months would be a lengthy extension. Plaintiff has shown good cause for some extension of the discovery deadline, and Defendants have consented to an extension mirroring the Massachusetts and New Jersey scheduling orders. [DE-61]. Accordingly, the court will extend the case management deadlines as follows:

1. All fact discovery shall be completed by **April 16, 2020**;

2. Reports from retained experts are due by **May 15, 2020**;

3. Reports from rebuttal experts are due **June 15, 2020**; and

4. All potentially dispositive motions shall be filed by **July 15, 2020**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel [DE-35] is ALLOWED in part and DENIED in part; Plaintiff's motion to compel ESI [DE-52] is ALLOWED; Defendants' motions

to seal [DE-38, -48, -57] are ALLOWED; and Plaintiff's motion for an extension of time to complete discovery [DE-42] is ALLOWED.

So ordered, the 12th day of February 2020.

Robert B. Jones, Jr.
United States Magistrate Judge